OPINION
{¶ 1} Plaintiff-appellant Wanda F. McPherson, trustee for the 1935 East Third Street Land Trust, appeals from a judgment rendered against her on her complaint to quiet title and for an injunction restraining defendant-appellees Gary L. Froelich and Drena Connor, trustees for the Jack W. Eichelberger Trust, from demolishing a wall. McPherson alleged that the wall was a party wall, also sometimes referred to as a common wall, or a joint wall, in which she had an interest as trustee. After a trial, the trial court, overruling objections to the magistrate's decision, found that McPherson had failed to prove that the wall Froelich and Connor intended to demolish was a party wall, and rendered judgment against McPherson.
 {¶ 2} McPherson contends that the trial court erred in finding a failure of proof on the issue of the wall's status, because Froelich and Connor, in their pleadings, had admitted that the wall was a party wall. Upon review, we find nothing in the pleadings filed by Froelich and Connor in this cause of action that constitutes an admission that the wall is a party wall. The most they have admitted is that the wall abuts McPherson's property, but this falls short of admitting that the wall is a party wall. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} The facts, most of which are not in dispute, are laid out in the decision of the trial court overruling McPherson's objections and "affirming" the decision of the *Page 3 
magistrate. We excerpt the essential facts, as follows:
 {¶ 4} "The Wanda McPherson Trust [the 1935 East Third Street Land Trust] * * * acquired the real property known as 1935 East Third Street, Dayton, Ohio, in 1997 from Mr. Vincent Ferrugia, the beneficiary of the * * * Trust. * * * . Mr. Ferrugia had acquired the * * * building from Dayton Tax and Accounting, who held the property since 1947. * * *.
 {¶ 5} "The real property located at 1939 East Third Street, Dayton, next door to [McPherson's] building, has been owned by the Jack W. Eichelberger Trust (the `Defendant Trust') since 2001. * * * . (Hereinafter referred to as `Defendant's building'). According to [McPherson's] Complaint, [her] building has been attached to a wall located on the 1939 East Third Street property since at least 1947. * * *. [McPherson] contends that the Trust has been in actual, open, exclusive, continuous adverse possession of the wall and is now the owner as a result of adverse possession or in the alternative an easement of the wall by adverse possession. * * * .
 {¶ 6} "In 2004, the City of Dayton ordered the demolition of Defendant's building. * * * . [McPherson] is requesting that the Wanda McPherson Trust's title to the wall be quieted against any right, title, or claim of the Jack W. Eichelberger Trust. * * * . On June 2, 2004, this Court granted [McPherson] a temporary restraining order restraining [Froelich and Connor] from destroying the wall. On June 21, 2005, [McPherson's] motion for a preliminary injunction was withdrawn.
 {¶ 7} "The Defendant Trust has counterclaimed against [McPherson] alleging its ownership of the subject wall. Further, according to the Defendant Trust, [McPherson] is trespassing on its property. Def. Counter Claim ¶¶ 9-11. Defendant is requesting that [McPherson's] complaint be dismissed and that Defendant be granted judgment *Page 4 
declaring ownership of the subject wall along with damages relating to [McPherson's] alleged trespass. * * * .
 {¶ 8} "In the midst of the current action, [McPherson's] building collapsed. [This appears to be factually incorrect. It appears from the pleadings that it was the "Defendant building," i.e., the one located at 1939 East Third Street, that collapsed while this litigation was pending.] On April 1, 2005, [McPherson] filed an amended complaint asserting a second cause of action, which is that Defendants had a duty [to maintain] the building and that they were negligent in doing so. Pl. Amended Compl. ¶¶ 8-9. Consequently, according to the Amended Complaint, Defendant's building collapsed causing harm to [McPherson's] building. * * * . [McPherson] also asserts that as a direct and proximate cause [sic — evidently "result" is intended] of Defendant's negligence, the City of Dayton removed the collapsed building causing further damage to [McPherson's] building. * * * . The subject wall is damaged but remains standing.
 {¶ 9} "No expert testimony was introduced at trial as to what would happen to [McPherson's] building if the subject wall is removed. The Magistrate visited the site of the subject wall and found that the disputed wall only adjoins approximately one-third of the western wall of [McPherson's] building. The Magistrate further found that the lower half of the front part of the wall abuts [McPherson's] building but there is approximately an inch of space between the upper half of the front part of the wall and [McPherson's] building. There are wooden planks within the one inch space. Finally, the Magistrate observed that the entire back end of the subject wall is separated by approximately one-quarter of an inch from [McPherson's] building. The Magistrate, as a lay person, was unable to determine whether [McPherson's] building, or even the small area of *Page 5 
[McPherson's] building that abuts the subject wall was supported by the wall or not supported by the wall. However, according to the Magistrate, there was clearly space between the two structures."
 {¶ 10} The magistrate bifurcated the hearing, first hearing the issue of whether McPherson had any legally protected interest in the subject wall, reserving the issue of damages for hearing later, if the first issue should be found in the affirmative.
 {¶ 11} At the close of McPherson's evidence, Froelich and Connor moved for a directed verdict, contending that the element of adversity had not been proven with respect to the claim of adverse possession, and also that there was a failure of proof on the issue of whether the wall was, in fact, a party wall. The motion for a directed verdict was overruled.
 {¶ 12} After the trial, and after post-trial briefs were filed, the magistrate rendered a decision in favor of the defendants, finding a failure of proof on the issue of whether the wall was a party wall. McPherson objected, contending that Froelich and Connor, in their answer and counterclaim, had admitted that the wall was a "joint" wall.
 {¶ 13} The trial court overruled McPherson's objections to the magistrate's decision, and "affirmed" that decision, by entry filed September 14, 2005. From that judgment, McPherson appeals. II {¶ 14} McPherson's sole assignment of error is as follows:
 {¶ 15} "THE TRIAL COURT ERRED BY DETERMINING THAT THERE WAS INSUFFICIENT EVIDENCE TO DEMONSTRATE THAT THE SUBJECT WALL *Page 6 
CONSTITUTED A JOINT WALL."
 {¶ 16} The trial court, in its decision overruling McPherson's objections, analyzed the joint, or "common party" wall issue as follows:
 {¶ 17} "[McPherson] argues that [she] has a legal right to utilize the common party wall located between 1935 E. Third and 1939 E. Third in Dayton through a prescriptive easement. A party wall can only be created by virtue of a contract between adjoining landowners, by force of statute or by prescription. Stebelton v. Massie, (May 19, 1981), 1981 Ohio App. Lexis 13015, 5. A party wall is defined `generally as a wall used by adjoining landowners as a division wall between two connected and mutually supported buildings of different owners, which usually stands half on the land of each.' Id. at 6. A party wall may be a wall that belongs entirely to one of the adjoining landowners, but is subject to an easement or right in the other to have it maintained as a dividing wall between the two buildings. Id. at 5; Brucks v. Weinig, (1929),34 Ohio App. 1, 5-6. Thus, [McPherson] must demonstrate that the wall in question is a party wall in the structural sense. Secondly, if the wall is structurally a party wall, [McPherson] must establish that it has a legal right to the wall through contract, statute or a prescriptive easement.
 {¶ 18} "The Magistrate cited three Ohio cases dealing with the issue of what constitutes a party wall, and this Court has not found any other more relevant judicial precedent. In Stebelton, supra, two buildings were built structurally independent and then later connected by the roof and ceiling through additions. Stebelton v. Massie, 1981 Ohio App. Lexis 13015 at 2. The Second Appellate District Court held that the wall was not a party wall because the wall alone cannot support the Plaintiffs building even *Page 7 
though a portion of the rafters and trusses of the building owned by the plaintiff was nailed to the wall. Id. at 6.
 {¶ 19} "In another case, the Fourth Appellate District Court found a party wall existed because the destruction of a wall would leave several of the Plaintiff's rooms exposed. Hopper v. Boilermakers Union Local105, 1980 Ohio App. Lexis 12952 at 6. The Plaintiff had built a roof over the space of his building and the building next to it creating a backroom. Id. at 1.
 {¶ 20} "Finally, the Fifth Appellate District Court held that a party wall existed because there was evidence that Plaintiff's building would be weakened if Defendant removed his building because the buildings were tied together when both buildings were constructed at the same time.Brucks v. Weinig (1929), 34 Ohio App. 1, 3-5.
 {¶ 21} "Although [McPherson] never filed the required written transcript, the Court was able to review the taped proceeding before the Magistrate. The Court, having reviewed this recording, finds that [McPherson] failed to present evidence that proves by a preponderance that the [wall] in question is a party wall. As in Stebelton, only a small portion of [McPherson's] building is attached to the wall in question and the wall alone does not appear to support [McPherson's] building. Although two lay witnesses testified for [McPherson] that the wall was part of [McPherson's] building, the Magistrate found that only about one-third of the west wall of [McPherson's] building adjoins the subject wall, and that there is space between [McPherson's] building and the upper and back end of the subject wall. [McPherson] did not present any expert testimony that [McPherson's] building is supported by the subject wall. Accordingly, the Court finds that the Magistrate did not error [sic] in determining that the subject wall is not a party *Page 8 
wall under Stebelton.
 {¶ 22} "Furthermore, unlike Hopper, the evidence does not demonstrate that a large section of [McPherson's] building will be exposed considering there is a space between [McPherson's] building and the upper and back end of the subject wall. Moreover, [McPherson] produced no evidence, other than a lay opinion, that [her] building would be weakened by removal of the subject wall.
 {¶ 23} "Finally, the Court notes that [the] Stebelton Court stated the following:
 {¶ 24} "`Our research and that of counsel has not disclosed any decisions in Ohio concerning a landowner whose building adjoins and partially supports a building of an adjoining owner owing a duty of continuing support. However, it is the generally accepted rule that in the absence of an express or implied agreement, grant or reservation to the contrary, a landowner whose building adjoins and partially supports a building of an adjoining landowner is under no obligation to continue the support, and if he notifies the adjoining owner of his intention and exercises reasonable care, he is not liable for damages ensuing from the removal of his building.' Stebelton, supra, at 7.
 {¶ 25} "Based on the evidence before the Court, [McPherson] has not demonstrated that the subject wall is structurally a party wall. As the basis for [McPherson's] claim of a prescriptive easement was not proven, the Court need not review the issue of an easement by prescription. Accordingly, the Court hereby affirms the Magistrate's Decision."
 {¶ 26} We find no obvious error in the trial court's legal analysis of the party wall issue, and McPherson, in support of her assignment of error, claims no error beyond her contention that Froelich and Connor, in their pleadings "have admitted that *Page 9 
[McPherson's] property abuts [their] property through the use of a joint wall. Given this admission and given the fact that this admission dispenses with the need for further proof, the entire basis for the trial court's decision is without foundation."
 {¶ 27} McPherson does not specifically cite to the part of Froelich's and Connor's pleadings in which this admission is allegedly to be found. We have examined all of their pleadings in the record, and the only portion thereof that we can imagine McPherson to be referring to is Paragraph 6 of Froelich's and Connor's First Amended Answer and Counterclaim, which states, in its entirety, as follows:
 {¶ 28} "A portion of the building, specifically, a section of the Defendant-Counterclaimant's western wall, was not demolished and remains standing. The Plaintiff is abutting the wall."
 {¶ 29} Significantly, Paragraph 9 of the same document alleges as follows:
 {¶ 30} "Defendant-counterclaimant is the owner of the real property on which the wall exists and is entitled to demolish the wall without liability to the Plaintiff."
 {¶ 31} At most, Paragraph 6 of Froelich's and Connor's First Amended Answer and Counterclaim admits that the wall in question abuts McPherson's property. But applying the legal authority cited by the trial court, which McPherson does not challenge, the mere fact that one landowner's wall abuts the property of another landowner, without more, does not establish that the wall is a "joint," or "common party" wall in which the abutting property owner has any legal interest. This admission does not establish that there is any agreement between the parties, or their privies, concerning the wall, that McPherson's building is structurally dependent upon the continued existence of the wall, or that removal of the wall will leave interior portions of *Page 10 
McPherson's building exposed.
 {¶ 32} McPherson's sole assignment of error is overruled.
 III {¶ 33} McPherson's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
GRADY, and WALTERS, J.J., concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1